UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GAIL BUOTE, PERSONAL REPRESENTATIVE
OF THE ESTATE OF KEVIN BUOTE and
INDIVIDUALLY,
        Plaintiff,

v.                                              CIVIL ACTION NO. 23-cv-12392-LTS[1]

JEREMY LEMENGER;[2] and
LAURA HUNTSMAN,
        Defendants.


REPORT AND RECOMMENDATION
ON DEFENDANT, LAURA HUNTSMAN'S, MOTION TO DISMISS (#6)


KELLEY, U.S.M.J.

I. Introduction.

        Gail Buote, individually and as personal representative of the estate of her husband, Kevin

Buote, filed suit against Jeremy LeMenager and his mother, Laura Huntsman, following the fatal,

head-on collision that LeMenager caused while driving Huntsman's vehicle. The accident, which

occurred in New Hampshire, resulted not only in Mr. Buote's tragic death but also serious injury

to Mrs. Buote. See #4, certified Plymouth Superior Court record, at 50-61, complaint. At the time

of the accident, Mr. and Mrs. Buote were heading to their home in Massachusetts. The complaint

alleges that LeMenager is a resident of Massachusetts and that Huntsman is a resident of New

---

[1] This case has been referred to this court for all pretrial purposes including management and
dispositive motions. (#12.)

[2] This is a misspelling. Like the parties, the court uses "LeMenager" in this report and
recommendation.

Jersey. (#4 at 50 (¶¶2-5).) Defendants, however, removed the case from the Plymouth Superior Court on the basis of diversity jurisdiction, submitting an affidavit of LeMenager attesting that he is a New Jersey domicile. (#1; #1-3.) Mrs. Buote has not yet moved to remand the case to the Plymouth Superior Court but, in opposing dismissal, asserts that LeMenager is a Massachusetts domicile, "[u]pon information and belief." *See* #17, opposition to Huntsman's Fed. R. Civ. P. 12(b)(6) motion to dismiss, at 4 n.1.

Presently before the court is Huntsman's Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See* #6, motion, #7, memorandum. Briefing is complete. *See* #17; #18, reply. The court held a hearing on December 12, 2023. (#23.) For the reasons set out below, the court recommends that Huntsman's Rule 12(b)(6) motion be denied without prejudice to the parties raising arguments regarding choice of law after discovery.

II. Fed. R. Civ. P. 12(b)(6).

 "A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility. . . ."

*Id.* (quoting *Twombly*, 550 U.S. at 556-557).

In deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court "accept[s] as true the complaint's well-pleaded factual allegations and draw[s] all reasonable inferences in favor of the" plaintiff, but it "do[es] not credit conclusory legal allegations or factual allegations that are too

meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (cleaned up) (citations omitted); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

III. <u>The Complaint</u>.

On January 10, 2023, the Buotes were traveling in the southbound lane of Route 16 in Ossipee, New Hampshire, heading to their home in Plymouth, Massachusetts. Mr. Buote was driving the vehicle; Mrs. Buote was in the passenger seat. (#4 at 51 (¶5).) At about 10:58 a.m., the vehicle driven by LeMenager, *see id*. (¶6), then "owned by his parent," Huntsman, *see id*. (¶7), crossed the northbound lane and the centerline into the southbound lane, resulting in a head-on collision with the Buotes' vehicle, *see id*. (¶6.) Mr. Buote was pronounced dead at the scene and Mrs. Buote was transported by ambulance for emergency medical care. *Id*. (¶8.) Mrs. Buote suffered severe and permanent injuries. *Id*. at 53 (¶24.)

Counts I and IV of the complaint allege that LeMenager owed Mr. Buote and Mrs. Buote, respectively, a duty to use reasonable care in operating and controlling his vehicle and to obey the laws and rules of the state of New Hampshire, to maintain proper speed under the circumstances, to reduce speed to avoid a collision, and to remain in control of his vehicle. LeMenager allegedly operated his vehicle negligently by traveling over the centerline and hitting the Buotes' vehicle head-on. LeMenager also allegedly operated his vehicle negligently when he failed to brake or take any meaningful evasive maneuvers to avoid the accident. LeMenager's negligence was the proximate cause of Mr. Buote's wrongful death and Mrs. Buote's severe and permanent injuries. *Id*. at 51-53 (¶¶10-13, 21-24.)

Count II is a claim for Mr. Buote's conscious pain and suffering. *Id*. at 51-52 (¶¶15-16.)

Count III alleges that LeMenager negligently, carelessly, recklessly, and without regard for the Buotes' lives, operated his vehicle in a manner that resulted in Mr. Buote's death. *Id*. at 52 (¶¶18-19.)

Count V is a claim for Mrs. Buote's loss of consortium. *Id.* at 53 (¶¶26-27.)

Count VI[3] alleges that on or about January 10, 2023, Huntsman was the owner of the vehicle operated by LeMenager, "a person for whose conduct" Huntsman "was legally responsible." *Id*. (¶¶29-30.)

Count VII[4] alleges that Huntsman negligently entrusted her vehicle to LeMenager, "a person whom she knew or should have known was not suitable to operate the vehicle." *Id*. (¶32.)

IV. The Parties' Arguments.

　　A. Vicarious Liability.

Huntsman moves to dismiss claims against her premised on vicarious liability because under New Hampshire law, the owner of a vehicle involved in an accident cannot be held vicariously liable merely because she is the owner of the vehicle. Huntsman further argues that if Massachusetts law applies, the complaint does not contain sufficient factual matter to state a claim to relief that is plausible on its face. According to Huntsman, Mrs. Buote must plausibly allege that Huntsman had the authority and means to control LeMenager's conduct; the allegation that Huntsman owned the vehicle is not sufficient. (#7 at 4-5.)

Mrs. Buote argues that under Massachusetts choice-of-law principles, either Massachusetts or New Jersey, not New Hampshire, law applies. (#17 at 2-4.) According to Mrs. Buote, she is a Massachusetts domicile, as was Mr. Buote, and the Commonwealth has a strong interest in the

---

[3] This count is misnumbered "V" in the complaint but is the sixth count.

[4] This count is also misnumbered "V" in the complaint but is the seventh count.

welfare of its citizens and ensuring that they are compensated adequately for injuries. *Id*. at 3-4. Moreover, New Jersey is Huntsman's domicile and, according to his affidavit submitted with defendants' notice of removal, it is also LeMenager's. *Id*. at 4. Conversely, no parties live in New Hampshire. *Id*. Relying on dicta in Magistrate Judge Bowler's decision in *Burleigh v. Alfa Laval, Inc.*, 313 F. Supp. 3d 343, 353-354 (D. Mass. 2018), an asbestos case, Mrs. Buote argues that the location of the accident was "fortuitous." (#17 at 4.) Plaintiff's counsel also represents, without affidavit or any documentation, that Huntsman's car was registered in New Jersey and insured by a New Jersey insurance group. *Id*. at 4.

Mrs. Buote argues that the choice between Massachusetts and New Jersey law is not material. In both states, there is a presumption that the owner of a vehicle involved in an accident is legally responsible. (#17 at 5-6.)

In reply, Huntsman maintains that New Hampshire law applies and rejects Mrs. Buote's reliance on *Burleigh*, *supra*, 313 F. Supp. 3d 343, among other cases. (#18 at 2-5.) Huntsman argues that even if Massachusetts or New Jersey law applies, dismissal is appropriate because the court cannot reasonably infer from the allegations in the complaint that LeMenager was driving his mother's vehicle as her employee or agent. *Id*. at 5-6.

B. Negligent Entrustment.

Huntsman moves to dismiss the negligent entrustment count, VII, on the ground that the complaint does not contain sufficient factual matter to state a claim to relief that is plausible on its face. Huntsman argues that there are no allegations from which the court can reasonably infer that she is liable for negligent entrustment once the threadbare allegation that she knew or should have known the LeMenager was not suitable to operate the vehicle is disregarded, as it must be. The

complaint does not plausibly allege that LeMenager was unfit or incompetent to drive or that Huntsman knew of such unfitness or incompetence. (#7 at 6.)

Opposing dismissal, Mrs. Buote relies on the "very low" pleading standard:

. . . LeMenager negligently crossed the centerline causing a head-on collision with a vehicle in the southbound lane of Route 16 in which Plaintiff and the decedent were traveling. Based on the conduct alleged, Huntsman knew or should have known that her son was not suitable to operate the motor vehicle.

(#17 at 8.) In reply, Huntsman argues that the accident itself could not have put her on notice of LeMenager's unfitness or incompetence. (#18 at 1-2.)

V. Analysis.

A. Vicarious Liability.

Under New Hampshire law, a driver's negligence is not imputed to the owner of the vehicle merely because she is the owner of the vehicle. *Danforth v. Fisher*, 71 A. 535, 536 (N.H. 1908) ("The defendant is not liable merely because [she] was the owner of the automobile by which the plaintiff was injured. If the Legislature can enact that an automobile or its owner shall be liable for any injury the driver may do to others whenever the latter would be, it has not seen fit to do so"). Mrs. Buote does not argue to the contrary in her briefing. Instead, she asks the court to apply Massachusetts or New Jersey law. (#17 at 2-7.)[5]

Mass. Gen. Laws ch. 231, § 85A, states:

In all actions to recover damages for injuries to the person or to property or for the death of a person, arising out of an accident or collision in which a motor vehicle was involved, evidence that at the time of such accident or collision it was

---

[5] The court has not found any New Hampshire authority suggesting that an owner bears any burden to prove that the driver of the vehicle was not acting on behalf of the owner at the time of the accident. *Caswell v. Maplewood Garage*, 149 A. 746, 755 (N.H. 1930) (noting lack of probative value of ownership and that any "administrative assumption" "does not change the burden of proof, nor free the plaintiff from the rule that [she] cannot invoke the judgment of the jury unless there is some substantial evidence upon which to base the essential findings in [her] favor"), *abrogated on other grounds*, *Daigle v. City of Portsmouth*, 534 A.2d 689, 702 (N.H. 1987).

> registered in the name of the defendant as owner shall be prima facie evidence that
> it was then being operated by and under the control of a person for whose conduct
> the defendant was legally responsible, and absence of such responsibility shall be
> an affirmative defence to be set up in the answer and proved by the defendant.

*Id*. The statute does not change the substantive law; it states a rule of evidence. *Cheek v. Econo-Car Rental Sys. of Boston, Inc.*, 473 N.E.2d 659, 662 (Mass. 1985). A driver's negligence remains imputable to the owner of the vehicle if, at the time of the accident, there was an agency relationship between them, i.e. the owner had the authority and means to control the driver's conduct. *Id*.; *see Covell v. Olsen*, 840 N.E.2d 555, 559 (Mass. App. Ct. 2006) (mother-son) (quoting *Thompson v. Auto Credit Rehabilitation Corp*., 775 N.E.2d 414, 417 (Mass. App. Ct. 2002)).

Under Mass. Gen. Laws ch. 231, § 85A, however, the burden is shifted to the owner, who must prove the absence of authority and means to control the driver's conduct. *Covell*, 840 N.E.2d at 559 (citing *Thompson*, 775 N.E.2d at 417); *see Cheek*, 473 N.E.2d at 660. The statute is remedial and intended to assist injured plaintiffs in proving that the driver of the vehicle was acting on behalf of the owner at the time of the accident. *Thompson*, 775 N.E.2d at 416-417 (citing *Legarry v. Finn Motor Sales*, 23 N.E.2d 1011, 1013 (Mass. 1939)). On the agency element, the mere fact of registration in the name of the defendant as owner "commonly carries the case to the jury," which "may disbelieve testimony of witnesses tending to the contrary." *Covell*, 840 N.E.2d at 559 (quoting *Mitchell v. Hastings & Koch Enter., Inc.*, 657 N.E.2d 78, 82 (Mass. App. Ct. 1995) (quoting *Legarry*, 23 N.E.2d at 1013)). By putting the burden of persuasion on the defendant, the statute makes it "extremely difficult" for a defendant to prevail at the summary judgment stage. *Id*.; *see*, *e.g.*, *id*. at 560 (mother failed to affirmatively eliminate any genuine issue of material fact regarding her authority and means to control son's conduct).

Similarly, New Jersey case law establishes a presumption of agency between the owner of the vehicle and driver that must be rebutted by the owner:

> . . .[U]se of an automobile upon a public highway by one who is not its owner raises a presumption of agency between the operator and the owner.
>
> The presumption is one of fact. It can be rebutted by a defendant-owner where a plaintiff seeks to hold [her] vicariously liable for the negligence of the driver. . . . To prevent the issue of agency from reaching the jury, the owner must show by uncontradicted testimony that no employer-employee or principal-agent relationship existed, or, if one did exist, that the employee or agent had transgressed the bounds of his authority. . . .
>
> This presumption, aside from placing upon the owner of a vehicle the burden of producing evidence as to the nature of the relationship existing between [herself] and the driver (a burden which presumably [she] is in a better position to carry), also serves the added benefit of bestowing upon plaintiffs a means of avoiding a directed verdict – i.e., it is a means of getting to the jury. . . .

*Harvey v. Craw*, 264 A.2d 448, 451-452 (N.J. Super. Ct. App. Div. 1970) (citations and punctuation omitted); *see Hernandez v. Velez*, 631 A.2d 590, 592 (N.J. Super. Ct. App. Civ. 1993); *Kauffman v. Gullace*, 600 A.2d 143, 148 (N.J. Super. Ct. App. Div. 1991); *see also Tischler v. Steinholtz*, 122 A. 880, 881-882 (N.J. Ct. Err. & App. 1923) (father-son; absent "uncontradicted" proof in rebuttal, liability is for jury).

Based on the above authority, if the court were to apply Massachusetts or New Jersey law, the vicarious liability theory would survive Huntsman's Fed. R. Civ. P. 12(b)(6) motion to dismiss, given the allegation in the complaint that she owned the vehicle at the time of the accident. (#4 at 51 (¶7).) Huntsman's argument to the contrary, *see* #7 at 5; #18 at 5-6, ignores the above authority.[6]

---

[6] Huntsman does not cite any New Jersey authority in support of this argument. *See* #18 at 5-6. The Massachusetts Appeals Court case that she cites in her initial brief, *Thompson*, *supra*, 775 N.E.2d 414, clearly states that under Mass. Gen. Laws ch. 231, § 85A, the burden of persuasion shifts to the owner. *Thompson*, 775 N.E.2d at 417. In the memorandum and order on summary judgment that Huntsman cites in reply, *DaRosa v. R&F Transp. Co.*, 2001 Mass. Super. LEXIS 354 (Mass. Super. Ct. 2001), the trial court likewise notes that the burden of persuasion shifts to

Mrs. Buote does not argue that the vicarious liability theory would survive Huntsman's Rule 12(b)(6) motion if the court were to apply New Hampshire law. The question arises whether, under New Hampshire law, the further allegation in the complaint of a familial relationship, *see* #4 at 51 (¶7)), carries the case at least to the summary judgment stage. The parties' briefing does not answer that question adequately, so at their invitation, the court discusses the choice-of-law issue.

Where a federal court sits in diversity jurisdiction, it is bound by the forum state's choice-of-law rules when determining the applicable substantive law. *Daley v. Mira, Inc.*, #18-cv-10353-LTS, 2023 WL 3605438, at *2 n.10 (D. Mass. May 23, 2023) (citing *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S.Ct. 1502, 1508 (2022)). The court only needs to conduct a choice-of-law analysis if applying different state laws would lead to different results. *Id.* (citing *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985)).

Historically, in tort cases, Massachusetts applied the substantive law of the state in which the conduct occurred. *Pevoski v. Pevoski*, 358 N.E.2d 416, 417 (Mass. 1976); *see Robidoux v. Muholland*, 642 F.3d 20, 25 (1st Cir. 2011). In *Pevoski*, the Supreme Judicial Court explained that this rule – lex loci delicti –

> has provided, and will continue to provide, a rational and just procedure for selecting the law governing the vast majority of issues in multistate tort suits. For example, in motor vehicle torts such as the one at bar standards of negligence will be appropriately furnished by the law of the jurisdiction in which the accident occurred. Rules of the road are determined quite properly by the State in which these roads are located – by the jurisdiction having the strongest interest in regulating the conduct of drivers on these highways.
>
> But we recognize that there also may be particular issues on which the interests of lex loci delicti are not so strong. Indeed on the particular facts of a case another jurisdiction may sometimes be more concerned and more involved with certain

---

the owner. *Id.* at *16-17. The court so notes in conducting a choice-of-law analysis and determining that New York law should apply. *Id.* at *18.

> issues than the State in which the conduct occurred. There is no reason why all issues arising out of a tort claim must be resolved by the reference to the law of the same jurisdiction. Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented.

358 N.E.2d at 417 (citation and punctuation omitted); *see*, *e.g.*, *id*. at 417-418 (although car accident occurred in New York, finding that Massachusetts law on interspousal immunity should apply where plaintiff-wife and defendant-husband were Massachusetts residents with Massachusetts insurer).

Now, Massachusetts follows a "functional" choice-of-law approach that "responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin*, 473 N.E.2d at 668; *see Cohen v. McDonnell Douglas Corp*., 450 N.E.2d 581, 584-585 (Mass. 1983); *see also USB Financial Servcs., Inc. v. Aliberti*, 133 N.E.3d 277, 288 n.12 (Mass. 2019). The functional approach is "explicitly guided" by the Restatement (Second) of Conflict of Laws (1971) ("Restatement"), *see USB Financial Servs*., 133 N.E.3d at 288 n.12 (citation omitted), which states that

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement § 146.

Further, the "General Principle" articulated in Restatement § 145 is that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement § 145(1).

The factors laid out in § 6 of the Restatement are:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Restatement §6(2); *see Daley*, 2023 WL 3605438, at *2-3.

The First Circuit has "refined the standard for tort and personal injury claims," focusing on Restatement § 145(2), *see Daley*, 2023 WL 3605438, at *3 (citing *Robidoux*, 642 F.3d at 25-26), which states:

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement § 145(2).

Mrs. Buote argues that under the functional approach, Massachusetts or New Jersey law applies, while Huntsman argues that under the functional approach, New Hampshire law applies.

In their briefing, neither party addresses whether it is proper for the court to conduct the choice-of-law analysis at this preliminary stage, before discovery. When the court raised the prospect of deferring any decision on choice-of-law until after discovery, plaintiff's counsel agreed with that approach while defense counsel argued that nothing revealed in discovery would change the conclusion that New Hampshire law should apply.

The First Circuit recently found that the lower court erred in making a choice-of-law determination at the dismissal stage, in a plaintiff-ex-wife's action against the defendant-university alleged to have received fraudulently transferred funds from her ex-husband as part of his scheme to conceal assets during the divorce proceedings. *Foisie v. Worcester Polytechnic Institute*, 967 F.3d 27, 42-44 (1st Cir. 2020). There, discovery might have revealed such salient facts as the ex-husband's primary residence at the time of the transfers as well as the geographic focal points of any relevant meetings and communications between the ex-husband and university. *Id*. at 43.

*Foisie* is in line with *Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*, 29 N.E.3d 197 (Mass. App. Ct. 2015), involving a claim of tortious interference with contractual relations. There, the Massachusetts Appeals Court found that the lower court erred in making the choice-of-law determination based on the allegations in the complaint, which were insufficient. *Id*. at 202. "[D]iscovery and development of a factual record [were] required to conduct the functional assessment envisioned by the Restatement." *Id*. at 203.

Several judges in this district have likewise declined to conduct the choice-of-law analysis at the dismissal stage. District Judge Stearns declined in a case involving a car accident. *Chinn v. General Motors Corp*., #07-cv-11249-RGS, 2007 WL 4287594, at *1-2 (D. Mass. Dec. 7, 2007) (denying, without prejudice, motion to dismiss in wrongful death and products liability case; defendant argued for application of Connecticut law, where the car accident occurred, or New

Jersey law, because it "'appear[ed]'" that the daughter was living in New Jersey when she died

from her injuries; at dismissal stage, defendants' "presumptions" of residency were not given

weight and court could not make choice-of-law determination on undeveloped factual record); *see*

*also, e.g., Picone v. Shire PLC*, #16-cv-12396-ADB, 2017 WL 4873506, at *15 (D. Mass. Oct. 20,

2017) (given complexity of case, choice-of-law analysis premature) (citing, *inter alia*, *Primarque*

*Prods. Co. v. Williams West & Witt's Prods. Co.*, #15-cv-30067-TSH, 2015 WL 10097150, at *1

(D. Mass. Jan. 4, 2016) (adopting report and recommendation in which then-Magistrate Judge

Hillman declined to conduct choice-of-law analysis at dismissal stage, *see id.* at *6 n.6)).

The timing of a choice-of-law analysis is case-specific. *Foisie*, 967 F.3d 42. Here, the court

believes that it is necessary and more prudent to defer pending discovery. This is especially so

because there appears to be a serious dispute about LeMenager's domicile. *Contrast* #1-3 *with* #4

at 51 (¶3); #17 at 4 n.1.[7] Parties' domiciles and residences are factors in the choice-of-law analysis.

Restatement § 145(2)(c); *see* #18 at 3.[8]

Because, as briefed by the parties, a decision on Huntsman's Fed. R. Civ. P. 12(b)(6)

motion to dismiss depends on a determination that New Hampshire, not Massachusetts or New

---

[7] At the hearing, plaintiff's counsel explained the basis for the assertion, "[u]pon information and belief," that LeMenager is a Massachusetts domicile. *See* #17 at 4 n.1. That counsel for both parties were making dueling factual assertions at the hearing underscores the need for discovery and development of a record.

[8] The court makes no choice-of-law recommendation on this undeveloped factual record but notes that Huntsman's argument that the location of the car accident is the most important factor, *see, e.g.,* #18 at 3, overlooks that the analysis is issue-dependent. Restatement § 145(2) ("These contacts are to be evaluated according to their relevant importance with respect to the particular issue"); *see* Restatement § 145, cmt. e ("In the case of personal injuries. . ., the place where the injury occurred is a contact that, as to most issues, plays an important role. . ."); *see also Pevoski*, 358 N.E.2d at 417 ("there. . .may be particular issues on which the interests of lex loci delicti are not so strong").

Jersey, law applies, the court recommends denying, without prejudice, so much of the motion that seeks dismissal of any claims against her premised on vicarious liability.

B. Negligent Entrustment.

Without question, to make out a claim of negligent entrustment under New Hampshire, Massachusetts and New Jersey law, Mrs. Buote must prove, among other essential elements, that LeMenager was unfit or incompetent to drive and that Huntsman knew of that unfitness or incompetence when she permitted him to drive.[9] On the knowledge element, however, there is a difference between New Hampshire and New Jersey law on the one hand and Massachusetts law on the other. In New Hampshire and New Jersey, the entrustor's constructive knowledge of the entrustee's unfitness or incompetence to drive suffices. *Weaver*, 151 A.3d at 75 ("is known or should have been known") (cleaned up) (citation omitted); *Mead*, 72 A.2d at 186 ("knows or ought reasonably to know"). In Massachusetts, actual knowledge is generally required. *Peters v. Haymarket Leasing, Inc.*, 835 N.E.2d 628, 633 (Mass. App. Ct. 2005) ("actual knowledge . . . (as contrasted with mere reason to know that the entrustee was unfit or incompetent)") (quoting *Mitchell*, 647 N.E.2d at 82-83).[10]

---

[9] *Weaver v. Stewart*, 151 A.3d 70, 73, 75, 78-79 (N.H. 2016) (elements generally and stating that plaintiff must present evidence of driver's appearance or conduct "at the time of entrustment" or evidence that owner was otherwise aware of driver's incompetence "at that time;" conduct suggesting intoxication after entrustment "irrelevant" to claim); *Garcia v. Steele*, 211 N.E.3d 602, 614 n.17 (Mass. 2023) (elements generally) (citing *Leone v. Doran*, 292 N.E.2d 19, 28-29, *vacated in part on other grounds*, 297 N.E.2d 493 (Mass. 1973)); *see Picard v. Thomas*, 802 N.E.2d 581, 587 (Mass. App. Ct. 2004) (claim must be based on entrustor's knowledge at the time that she permitted entrustee to drive); *Mead v. Wiley M.E. Church*, 72 A.2d 183, 186 (N.J. 1950) (elements generally); *see Votor-Jones v. Kelly*, #A-0253-17T3, 2018 WL 4038086, at *4 (N.J. Sup. Ct. App. Div. Aug. 24, 2018) (per curiam) (unpublished) (suggesting that claim must be based on entrustor's knowledge at time of entrustment).

[10] The court notes that Mass. Gen. Laws ch. 90, § 12(b), imposes criminal liability on the owner or person in control of a motor vehicle who knowingly permits operation by a person who is unlicensed or whose license has been revoked or suspended. *Id.* Prior to the amendment of the statute to add that the owner or person in control must act "knowingly," the Massachusetts Appeals

In their briefing, neither party squarely addresses this or any other potential differences between New Hampshire, Massachusetts and New Jersey law of negligent entrustment. *See* #7 at 5-6, #17 at 2-8, #18 at 1-2.[11] Without adequate briefing, for the same reasons that the court declines to conduct a choice-of-law analysis on vicarious liability-based claims at this preliminary stage, it declines to conduct a choice-of-law analysis on the negligent entrustment one. Thus, the court recommends denying, without prejudice, so much of Huntsman's motion to dismiss that seeks dismissal of Count VII.

VI. <u>Conclusion</u>.

For the reasons set forth above, the court recommends that Huntsman's Fed. R. Civ. P. 12(b)(6) motion to dismiss (#6) be denied, without prejudice to the parties raising choice-of-law arguments after discovery.

---

Court held that an owner may be liable for negligent entrustment if the driver is unlicensed, even if the owner did not have actual knowledge of that fact. *Mitchell*, 647 N.E.2d at 83.

Moreover, the Appellate Division of the New Jersey Superior Court recently reversed a trial court's holdings that the owner had no duty to inquire whether the entrustee was certified to operate the forklift, and that the owner's actual or constructive knowledge of the operator's inexperience was required. The "central question is not whether it was foreseeable that [the operator] would misuse the forklift; rather, the question is whether it was generally foreseeable that providing a forklift to an inexperienced operator poses a risk of serious injury to others on the premises." *Medina v. Bartlett*, #A-0689-21, 2023 WL 7121429, at *4-5 (N.J. Sup. Ct. App. Div. Oct. 30, 2023).

There is no allegation in the complaint that LeMenager was unlicensed or that his license had been revoked or suspended. LeMenager attests to holding "a driver's license in New Jersey at all relevant times." (#1-3 ¶18.) The court does not anticipate that state law principles pertaining to an owner's entrustment to an unlicensed driver will apply. However, it is possible that discovery proves otherwise.

[11] Huntsman incorrectly claims in her initial brief that under both New Hampshire and Massachusetts law, the owner must have "actually" known of the driver's unfitness or incompetence. (#7 at 5-6.)

VII. <u>Review by District Judge</u>.

The parties are advised that any objections to this Report and Recommendation must comply with Fed. R. Civ. P. 72(b)(2), which requires that objections be made in writing and filed within fourteen days of service of the Report and Recommendation. The written objections must specifically identify the portions of the Report and Recommendation to which the party objects and the grounds for the objections. A party's failure to comply with Fed. R. Civ. P. 72(b)(2) will preclude further appellate review. *Santos-Santos v. Torres-Centeno*, 842 F.3d 163, 168-169 (1st Cir. 2016).

December 14, 2023                          <u>/s/M. Page Kelley</u>
                                           M. PAGE KELLEY
                                           UNITED STATES MAGISTRATE JUDGE